UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00052-HBB

STACY M. EVANS                                                                PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                  DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Stacy M. Evans ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both Plaintiff (DN 16) and Defendant (DN 19) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12).   By Order entered September 29, 2020 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

FINDINGS OF FACT

Prior to the present case, on June 30, 2014, Plaintiff protectively filed an application for Supplemental Security Income Benefits (Tr. 28, 180).   Plaintiff alleged to have become disabled on January 1, 2014, which was amended to August 1, 2014 (Id.).   The previous Administrative Law Judge, Yvette N. Diamond ("ALJ Diamond"), found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the knees, status post right knee arthroscopy; diabetes mellitus; asthma; obesity; and depressive disorder (Tr. 182).   None of these severe impairments met or medically equaled the Listings in Appendix 1 (Id.).   Ultimately, on February 22, 2016, ALJ Diamond denied Plaintiff's claim at the fifth step and found that she was not under a disability from August 1, 2014 (Tr. 28, 190-92).

Plaintiff protectively filed an application for Supplemental Security Income Benefits on August 11, 2016[1] (Tr. 19, 201 216, 355).   Plaintiff alleges to have become disabled on February 18, 2016, as a result of depression, anxiety, asthma, migraines, high blood pressure, diabetes, back problems, and acid reflux (Tr. 19, 201-02, 346).   This claim was initially denied on December 27, 2016, and the denial of the claim was affirmed upon reconsideration on March 14, 2017 (Tr. 19, 212-13, 228-29).   Administrative Law Judge Walter R. Hellums ("ALJ Hellums") conducted a video hearing from St. Louis, Missouri on September 4, 2018 (Tr. 19, 147).   Virtually present at the hearing from Bowling Green, Kentucky was Plaintiff and his attorney Mary Burchett-Bower (Id.).   During the hearing, Tanja H. Hubacker testified as a vocational expert (Tr. 19, 147, 171-75).

---

1   ALJ Hellums stated that Plaintiff's application date was August 30, 2016, as opposed to Plaintiff's protective filing date of August 11, 2016 (Tr. 19, 32-33, 201 216, 355).   However, "[P]laintiff concedes that the error was harmless[,]" as "[t]he ALJ was clearly intending to address the earliest relevant date in the case[, and n]othing occurred between the protective filing date [. . .] and the application date [. . .] documenting a change in conditions during this short period" (DN 16 PageID 1451).

At the first step, ALJ Hellums found that Plaintiff had not engaged in substantial gainful activity since August 30, 2016 (Tr. 21).   At the second step, ALJ Hellums determined Plaintiff has the following severe impairments: thoracolumbar degenerative disc disease, asthma, right knee chondromalacia, morbid obesity, anxiety, and depression (Id.).   ALJ Hellums also found Plaintiff's hypertension, diabetes, sleep apnea, kidney stones, borderline hepatomegaly with fatty infiltration, and gastroesophageal reflux disease to be nonsevere, while Plaintiff's migraine headaches were not considered a medically determinable impairment (Tr. 21-22).   At the third step, ALJ Hellums concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 22).

At the fourth step, ALJ Hellums found that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations: she is able to occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally use foot controls with the bilateral lower extremities; and occasionally stoop, kneel, crouch, and crawl; Plaintiff must avoid frequent exposure to work-related extreme cold, extreme heat, and humidity; avoid frequent exposure to pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation and must avoid frequent exposure to hazards, such as unprotected heights and unguarded moving machinery; Plaintiff is able to perform work that requires occasional contact with the public and coworkers; and she is able to perform work that requires occasional changes in work tasks and station (Tr. 25).   ALJ Hellums found Plaintiff has no past relevant work (Tr. 31).

At the fifth step, ALJ Hellums also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in significant numbers in the national economy (Id.). Therefore, ALJ Hellums concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since August 30, 2016 (Tr. 32).

Plaintiff timely filed a request for the Appeals Council to review ALJ Hellums' decision (Tr. 326-28). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of ALJ Hellums' decision (Tr. 1-4).   At that point, ALJ Hellums' decision became the final decision of the Commissioner.   20 C.F.R. § 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of ALJ Hellums, not the Appeals Council, and the evidence that was in the administrative record when ALJ Hellums rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)      Is the claimant engaged in substantial gainful activity?

5

2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, ALJ Hellums denied Plaintiff's claim at the fifth step.

<u>Drummond</u> Challenge to ALJ Hellums' Determination

1.  Arguments of the Parties

Plaintiff's primary challenge to ALJ Hellums' determination is centered upon the RFC finding (DN 16 PageID 1452).   Plaintiff claims, "The ALJ recognize[d] a prior decision in [Plaintiff's] June 30, 2014 (protective filing date) application for SSI benefits" and that decision noted the following severe impairments: "[d]egenerate disc disease of the lumbar spine; degenerative joint disease of the knees, status post right knee arthroscopy; diabetes mellitus; asthma; obesity; and depressive disorder" (<u>Id.</u> at PageID 1453).   However, when looking at the SSI application before the Court, "the ALJ indicate[d] new and additional evidence that provides a basis for a different finding of [Plaintiff's] residual functional capacity[,]" but "[d]espite the ALJ's conclusion, evidence in the August 2016 application suggest a worsening in the lumbar spine impairment, not improvement" (<u>Id.</u> at PageID 1454-55).

6

In contrast, Defendant claims "[t]he ALJ's assessment of Plaintiff's residual functional capacity . . . was reasonable and supported by substantial evidence" (DN 19 PageID 1468). Defendant argues that "[t]he ALJ considered the prior ALJ's decision, and discussed it in light of *Drummond v. Comm'r of Soc. Sec.*, . . . and Acquiescence Ruling [] 98-4(6)" (Id. at PageID 1469) (citing Tr. 19, 28).   Defendant, after a thorough recounting of Drummond and its progeny, asserts that ALJ Hellums properly made "determinations based on a 'fresh look' of the 'new evidence . . . that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings" (Id. at PageID 1470) (citing Early v. Comm'r of Soc. Sec., 893 F.3d 929, 931 (6th Cir. 2018)).   "The ALJ acknowledged that there was a prior claim that was denied at the hearing level[,]" but "[t]he ALJ explained that the current claim involved deciding whether Plaintiff was disabled during a period that was not adjudicated in the final decision on the prior claim" (Id.) (citing Tr. 28) (footnote omitted).   Thus, ALJ Hellums properly considered new evidence regarding Plaintiff's impairments and physical limitations (Id. at PageID 1470-72).

2.   Discussion

At the fourth step, the Administrative Law Judge crafts an RFC finding which is the ultimate determination of what a claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 416.945(a), 416.946(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.  20 C.F.R. §§ 416.929, 416.945(a), 416.946(c).   Thus, in making the RFC finding, the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 416.927(c), 416.929(a).

While opinions from treating and examining sources are considered on the issue of RFC, the Administrative Law Judge is responsible for making that determination.   20 C.F.R. § 416.927(d).

There is a difference between a medical opinion and an RFC Assessment prepared by the Administrative Law Judge.   The medical opinion is submitted by a medical source and expresses impairment-related functional limitations.   20 C.F.R. §§ 416.913(a)(2), 416.927(a)(1).   By contrast, the RFC Assessment is the Administrative Law Judge's ultimate finding of what the claimant can still do despite her limitations.   20 C.F.R. §§ 416.945(a), 416.946.

Turning to the issue of a prior application's determination in the record, in Drummond v. Comm'r of Soc. Sec., the Sixth Circuit held that the principles of *res judicata* apply to RFC findings in the final decision of the Commissioner.   *See* 126 F.3d 837, 842-843.   More specifically, the Sixth Circuit directed that when there is final a decision concerning a claimant's entitlement to benefits, and the claimant files a new application for benefits addressing the unadjudicated period of time that proximately follows the adjudicated period of time, the Commissioner is bound by the RFC findings in that final decision absent changed circumstances. Id.   Notably, the Sixth Circuit indicated that the burden is on the Commissioner to introduce substantial evidence demonstrating changed circumstances to escape *res judicata*.   Id. at 843.

In light of Drummond, the Commissioner issued Acquiescence Ruling ("AR") 98-4(6) directing states within the Sixth Circuit to follow that holding, by explaining the following in the pertinent part:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators *must* adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with

8

> respect to the unadjudicated period *unless there is new and material*
> *evidence relating to such a finding* or there has been a change in the
> law, regulations or rulings affecting the finding or the method for
> arriving at the finding.

AR 98–4(6), 1998 WL 283902, at *3 (June 1, 1998) (emphasis added).   Although <u>Drummond</u>

involved a Title II case, AR 98-4(6) recognizes that "similar principles also apply to Title XVI

cases." <u>Id.</u> n.1.   Therefore, AR 98-4(6) directs that the "Ruling extends to both title II and title

XVI disability claims." <u>Id.</u>

On February 22, 2016, ALJ Diamond found that has the following severe impairments:

degenerative disc disease of the lumbar spine, status post right knee arthroscopy; diabetes mellitus;

asthma; obesity; and depressive disorder (Tr. 182).   However, none of those impairments, or

combination thereof, met or medically equaled the listings in Appendix 1 (<u>Id.</u>).   Thus, Plaintiff

had an RFC to perform light work with the following limitations: she can lift and carry twenty

pounds occasionally and ten pounds frequently; stand or walk for six out of eight hours; and sit for

six out of eight hours; she can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl

but cannot climb ladders; she required the option to sit or stand at will without leaving the

workstation; she cannot have concentrated exposure to temperature extremes, respiratory irritants,

vibration, or hazards; she is limited to simple, routine tasks and occasional contact with

supervisors, coworkers, and the public; restricted to low stress work defined as occasional decision

making and occasional changes in work setting (Tr. 184-85).

ALJ Hellums, in determining Plaintiff's new RFC, found that "new and additional evidence

that provides a basis for a different finding" was present in the new application (Tr. 28).

"Specifically, [ALJ Hellums found] that the mild findings on physical examination . . . do not

support the balancing, vibration, or sit/stand limitation given by [ALJ Diamond]" (Id.). Additionally, Plaintiff's knee and radiculopathy supported limitations on the use of foot controls (Id.). Throughout the paragraph distinguishing from ALJ Diamond's opinion, ALJ Hellums cited no exhibits or evidence, except for citing ALJ Diamond's decision in preface (Id.).

At issue, then, is whether there was new and material evidence that substantiates a deviation from ALJ Diamond's determination regarding the balance, vibration, and sit/stand limitations, as well as the foot control limitations. Upon first review of the relevant limitations, ALJ Diamond's RFC determination had the following limitations: Plaintiff can stand or walk for six out of eight hours; she can sit for six out of eight hours; she can occasionally balance; she requires the option to sit or stand at will without leaving the workstation; and she must avoid concentrated exposure to vibration (Tr. 185). There were no limitations on foot controls, and there were no discussions in ALJ Diamond's opinion regarding balance or foot controls (Tr. 184-90). In contrast, ALJ Hellums' RFC determination implemented only one relevant functional limitation: Plaintiff can occasionally use foot controls with the bilateral lower extremities (Tr. 25). ALJ Hellums did not impose any limitations on balance, vibration, or sitting and standing (Id.).

In ALJ Diamond's report, she utilized the following information to craft the aforementioned RFC limitations: Plaintiff's testimony that she cannot stand because of back pain and numbness in her feet, as well as her ability to only sit and stand for ten minutes at a time; an August 2014 report of intense pain radiating down Plaintiff's back and into her hips, which worsens with prolonged sitting or standing; a September 2014 report noting "a waddling gait" and an inability to sit down or stand still due to back pain, and the abnormal gait was documented again in March 2015; a November 2014 report "alleg[ing] that she has back pain with radiation through

10

her legs, and stated that prolonged standing brings her to tears"; a February 2015 knee x-ray which documented little left knee degeneration after a July 2014 arthroscopy and chondroplasty surgery; in May 2015, Plaintiff had "bilateral leg edema . . . further suggesting vascular complications"; a January 2016 report noting guarded movements between sitting and standing with a limited range of motion in her lumbar spine; and Plaintiff's conflicting reports of whether she uses a cane for ambulatory assistance (Tr. 185-88).[2]   These reports assisted in the crafting of the limitations related to alternating between sitting and standing, as well as the avoidance of vibration (Id.). However, ALJ Diamond's report does not explicitly mention any reports which would influence the balance limitation, and ALJ Diamond never discussed any limitations, reports, or notations regarding foot controls (Tr. 182-92).

Included in the opinion weighing was the opinion of State agency medical consultant Dr. Diosdado Irlandez, M.D., who was awarded considerable weight, and Dr. Irlandez asserted, among other conclusions, that Plaintiff should avoid concentrated exposure to vibration, and Plaintiff is able to "stand or walk up to six hours out of an eight-hour day, and sit up to six hours out of an eight-hour day" (Tr. 189).   ALJ Diamond noted that Dr. Irlandez rendered his opinion prior to documentation that described restrictions to thirty percent of normal lumbar range of motion (Id.). Additionally, ALJ Diamond awarded some weight to the functional opinion of Plaintiff's mother-in-law, where Plaintiff's mother-in-law stated that Plaintiff had difficulty walking due to leg and foot swelling, can walk no more than four or five feet before resting, and requires crutches to walk (Tr. 190).

---

2   In ALJ Diamond's opinion, she explicitly cites to the medical documentation in the record before her.   However, as that record pagination may have changed since ALJ Diamond's report, the undersigned has omitted the citations to avoid confusion of the exhibits in this record.

Before ALJ Hellums was over one thousand pages of documentation, detailing the various medical visits, results, notations, and opinions.   In his determination, ALJ Hellums clearly remarked, "While physical examination shows some decreased range of motion in the lumbar spine and occasional wheezing, routine findings are largely normal: normal gait, intact strength, intact sensation, normal joint range of motion, and full chest expansion" (Tr. 26) (citing B22F, B23F, B28F, B30F, B34F).   Additionally, the EMG/NCV of the lower extremities was normal (Id. citing B27F), the interpretation noted that the lumbar spine, hip, and knee active ranges of motion were normal, and Plaintiff's gait was normal (Tr. 1187-91).   Next, ALJ Hellums remarked that Plaintiff's allegations regarding her impairments were not supported by the radiographic evidence, specifically the MRI of the lumbar spine revealing mild hypertrophic changes, moderate left paracentral disc herniation, and moderate degenerative changes (Tr. 26).   This lack of support was also due to the imaging of Plaintiff's knee showing only mild degenerative change (Id.). Another consideration was the conservative and limited treatment to Plaintiff's physical impairments (Id.).   Additionally, ALJ Hellums articulated that Plaintiff was classified as morbidly obese, which may impose limitations on sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balance, stooping, and crouching, but ALJ Hellums noted that Plaintiff's "obesity was adequately accommodated with the light residual functional capacity" (Tr. 26-27).

As discussed in more depth below, ALJ Hellums awarded little weight to Nurse Sheffield's opinion, stating the limitations noted were extreme compared to all other opinions in the record (Tr. 29).   As for the functional report by Plaintiff's aunt, it was awarded little weight due to infrequency of visitation to observe Plaintiff's impairments, the consideration of whether Plaintiff's aunt could be objective, and that Plaintiff's aunt not being a medical professional (Id.).

While only awarded "some weight", ALJ Hellums considered the state agency non-examining consultants, who found mild limitations, and remarked that Plaintiff could sit or stand and walk for six hours out of an eight-hour work day, but should avoid concentrated exposure to vibration (Tr. 29); *see also* (Tr. 211, 225-26).   Surprisingly, Dr. Sadler, the State agency non-examining consultant from the reconsideration stage, remarked that the "[n]ew evidence does not indicate significantly different limitations than assigned in 2/2/16 ALJ [Diamond's] decision" (Tr. 227).   Dr. Sadler indicated that <u>Drummond</u> and AR 98-4(6) may apply (Tr. 228-29).

However, when comparing ALJ Diamond's determination with ALJ Hellums' opinion, as well as the evidence in the record, ALJ Hellums' decision and explanation that "new and additional evidence" was present to craft a new RFC was proper.   There were several examinations that displayed normal results, and those that didn't were properly accounted for in the RFC determination, specifically the knee pain, the left-sided radiculopathy, and the bilateral neuropathy of the feet (Tr. 27).   The evidence of the radiculopathy and the bilateral neuropathy both provided a foundation for the limitation requiring occasional use of foot controls (Tr. 27-28).

Substantial evidence exists in the record to support this determination, as discussed above. Therefore, the undersigned finds that ALJ Hellums' opinion comports with applicable law when deviating from ALJ Diamond's determination, and Plaintiff is not entitled to relief.

### Challenge to ALJ Hellums' RFC Determination

1.   Arguments of the Parties

In tandem to the <u>Drummond</u> challenge, Plaintiff claims "[t]he ALJ fails to consider evidence of Chris Taleghani, M.D., of May 18, 2017 indicating antalgic gait" and "[t]he ALJ was wrong to reject the sit/stand at will option, avoid concentrated exposure to vibration, and

occasional balance restrictions identified in the prior ALJ decision" (DN 16 PageID 1456) (citing Tr. 225-27, 1376).   Further, Plaintiff asserts that "the ALJ fails to give proper consideration to the opinions of APRN Sheffield regarding physical and mental limitations" (Id. at PageID 1457) (citing Tr. 1367-70, 1372-73).   Finally, "the ALJ fails to consider evidence indicating a worsening in mental state since the prior ALJ decisions" (Id.).

The United States instead argues that "[t]he ALJ took into account that Plaintiff's treatment for her physical conditions had been conservative and limited in nature" (DN 19 PageID 1473). Turning to the mental impairments and limitations, Defendant claims ALJ Hellums properly considered the diagnoses, complaints, and medical notes, as well as the conservative treatment history (Id. at PageID 1474).   As for information that was not explicitly discussed by ALJ Hellums, Defendant claims that ALJ Hellums was not required to "discuss every piece of evidence" (Id. at PageID 1476) (citing Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006)).   Defendant also disputes Plaintiff's theory that the diagnostic evidence supported the claim that the back impairment was worsening, not improving (Id.).   Defendant argues that ALJ Hellums properly considered all the evidence in the record, and even if there is support for greater limitations, the existence of that evidence does not make ALJ Hellums' determination unsupported by substantial evidence (Id. at PageID 1476-77).

2.   Discussion

As discussed earlier in this opinion (supra pp. 7-8), the RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations.   20 C.F.R. §§ 416.945(a), 416.946(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case

14

record.   20 C.F.R. §§ 416.929, 416.945(a), 416.946(c).   Thus, in making the RFC finding, the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 416.927(c), 416.929(a). While opinions from treating and examining sources are considered on the issue of RFC, the Administrative Law Judge is responsible for making that determination.   20 C.F.R. § 416.927(d).

There is a difference between a medical opinion and an RFC Assessment prepared by the Administrative Law Judge.   The medical opinion is submitted by a medical source and expresses impairment-related functional limitations.   20 C.F.R. §§ 416.913(a)(2), 416.927(a)(1).   By contrast, the RFC Assessment is the Administrative Law Judge's ultimate finding of what the claimant can still do despite her limitations.   20 C.F.R. §§ 416.945(a), 416.946.

In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings.   20 C.F.R. §, 416.929; SSR 16-3p. A claimant's statement that he/she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged.   20 C.F.R. § 416.929(a).   In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in <u>Duncan v. Sec'y of Health & Human Servs.</u>, 801 F.2d 847, 853 (6th Cir. 1986), applies.   First, the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be

expected to produce the alleged disabling pain."   Id.   When, as in this case, the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged.   20 C.F.R. § 416.929(c)(3).

The frequency that Plaintiff has sought treatment for impairments is a factor that may be considered in assessing her subjective complaints.   20 C.F.R. § 416.929(c)(3)(v).   Another factor that may be considered is whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between [Plaintiff's] statements and the rest of the evidence . . . ". 20 C.F.R. § 416.929(c)(4).   Additionally, the medication used to alleviate the alleged pain or other symptoms may also be considered.   20 C.F.R. § 416.929(c)(3)(iv).   Mild medication and infrequency of dosages taken by the claimant do not bear out claims of debilitating pain.   *See* Maher v. Sec'y of Health & Human Servs., 898 F.2d 1106, 1109 (6th Cir. 1989).

Finally, as this application was filed prior to March 27, 2017, the law is well established regarding the use of medical opinions and acceptable medical sources.   The treating source rule applies to a "medical opinion" rendered by an "acceptable medical source" who has, or has had, an ongoing treatment relationship with the claimant.   20 C.F.R. § 416.927(a).   Additionally, the regulations expressly indicate only "acceptable medical sources" are qualified to render "medical opinions" about the nature and severity of a claimant's impairment, including limitations or restrictions imposed by the impairment.   20 C.F.R. §§ 416.913(a), 416.927(a).   The regulations do not classify nurse practitioners as "acceptable medical sources."   20 C.F.R. § 416.902(a)(7).

In the present case, Plaintiff argues that ALJ Hellums failed to properly consider Dr. Chris Taleghani's report, including a notation of antalgic gait (DN 16 PageID 1456).   However, ALJ Hellums cites to Dr. Taleghani's report (listed as Exhibit B34F) when discussing that Plaintiff "treats her hypertension and high cholesterol with maintenance medication with little to no resultant symptomology" and when stating, "While physical examination shows some decreased range of motion in the lumbar spine and occasional wheezing, routine findings are largely normal: normal gait, intact strength, intact sensation, normal joint range of motion, and full chest expansion" (Tr. 22, 26).   Additionally, Dr. Taleghani stated that he thought Plaintiff "need[ed] to complete physical therapy, [and . . .] obtain an EMG of the lower extremities" (Tr. 1376).   Plaintiff did obtain an EMG, and ALJ Hellums noted that the results were normal (Tr. 26) (citing Tr. 1187-91).   Therefore, ALJ Hellums appropriately considered Dr. Taleghani's documentation.

Nurse Sheffield, as noted above, was not considered an acceptable medical source at the time the application was filed.   20 C.F.R. §§ 416.902(a)(7)., 416.927.   As ALJ Hellums explicitly explained, Nurse Sheffield was awarded little weight as she was not an acceptable medical source and "[t]he physical and mental limitations provided are extreme in comparison to the . . . mild findings on both physical and mental examination" (Tr. 29).   In her report, Nurse Sheffield stated that Plaintiff could sit, stand, and walk less than two hours per eight-hour work day, that Plaintiff needed a ten minute walk every ten to fifteen minutes, that Plaintiff must spent at least half of an eight-hour work day with her legs elevated above her heart, and that Plaintiff cannot sit in the same position for more than five to ten minutes (Tr. 1368-70).   As for the mental health notations, ALJ Hellums properly noted that Nurse Sheffield is not a mental health professional and awarded little weight to her opinion as a whole (Tr. 29).

Finally, ALJ Hellums, at step three of the process, considered Listings 12.04 and 12.06, which pertain to Plaintiff's mental impairments (Tr. 23).   ALJ Hellums echoed the opinions of the State agency consultants, who found mild limitations in the paragraph "B" criteria for these listings (Tr. 23-25); *see also* (Tr. 208, 223).   Further, ALJ Hellums discussed the diagnoses of depression and anxiety, but state that "[m]ental status examination does not fully corroborate the claimant's allegations.   Treatment records note a flat/depressed affect and mild anxiety, but do not record any significant psychological abnormalities on examination" (Tr. 27).   Additionally, ALJ Hellums remarked that Plaintiff's mental health treatment "has been conservative and limited to antidepressant medication and counseling. . . . There have been no inpatient admissions" (Id.).

Therefore, the undersigned finds that ALJ Hellums comported with applicable law, and his determination is supported by substantial evidence.   ALJ Hellums properly considered the opinions of Dr. Taleghani and Nurse Sheffield, as well as fully analyzing and discussing Plaintiff's mental impairments.   As such, Plaintiff is awarded no relief under this challenge.

Challenge to Finding No. 9

1.   Arguments of the Parties

Plaintiff's last challenge to ALJ Hellums' determination, stemming from the RFC challenge above, is the claim that ALJ Hellums' reliance upon the vocational expert's testimony was erroneous, due to an improper RFC (DN 16 PageID 1458-59).   Taking Plaintiff's Finding No. 4 argument as correct, *arguendo*, then ALJ Hellums' hypothetical questioning posed to the vocational expert would not have been applicable to someone with Plaintiff's "appropriate" RFC (Id.); *see also* Varley v. Sec. of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987).

18

In response to this argument, Defendant claims, "Because the ALJ did not err in assessing Plaintiff's RFC [. . .], the ALJ properly relied on the vocational expert's testimony in response to a hypothetical question that indicated the RFC limitations that he ultimately assessed in order to find that Plaintiff could perform a significant number of jobs in the economy, and thus, was not disabled" (DN 19 PageID 1482).

    2.  Discussion

At the fifth step of the sequential analysis, a vocational expert's testimony must be based on a hypothetical question which accurately portrays the claimant's physical and mental impairments.  Varley, 820 F.2d at 779.   A hypothetical question is not erroneous where at least one doctor substantiates the information contained therein.  Hardaway v. Sec'y of Health & Hum. Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam).   Furthermore, there is no requirement that the ALJ's hypothetical question to the vocational expert reflect the claimant's unsubstantiated complaints.  David v. Sec'y of Health & Hum. Servs., 915 F.2d 186, 189 (6th Cir. 1990).   It is the Commissioner's job to evaluate the trustworthiness of the vocational expert's testimony.  Sias v. Sec'y of Health & Human Servs., 861 F.2d 475, 480 (6th Cir. 1988) (per curiam).   A vocational expert's testimony can constitute substantial evidence to support the ALJ's finding that a plaintiff is capable of performing a significant number of jobs existing in the local, regional, and national economies, Bradford v. Sec'y, Dep't. of Health & Hum. Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as the vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental impairments.  Varley, 820 F.2d at 779.

As described above, ALJ Hellums' RFC determination was supported by substantial evidence.  *Supra* pp. 13-14, 18.   Thus, the questioning posed to the vocational expert was proper, and the responses regarding occupations and limitations is supported by substantial evidence. Therefore, Plaintiff's argument is unpersuasive.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of ALJ Hellums.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if ALJ Hellums followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

March 31, 2021

Copies:          Counsel of Record

21